IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY S., <br><br> Claimant, <br><br> v. <br><br> FRANK J. BISIGNANO, <br> Commissioner of Social Security, <br><br> Respondent. | No. 23 C 533 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Anthony S.[1] ("Claimant") seeks judicial review of the final decision of the Commissioner of Social Security[2] ("Commissioner"), denying his request for disability insurance benefits for a limited period of time from March 11, 2009, Claimant's amended disability onset date, through March 31, 2011, his date last insured. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 6]. After reviewing the record and the parties' briefs, the Court denies Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 13] and grants the Commissioner's Motion for Summary Judgment [ECF No. 16]. Therefore, the decision of the Commissioner is affirmed.

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by his first name and the first initial of his last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

1

## BACKGROUND

**I.     Procedural History**

This case has an extensive procedural history in both the Social Security Administration and federal court.[3] Claimant initially filed an application for a period of disability and disability insurance benefits on October 24, 2012, alleging a disability beginning August 1, 2007. (R.623). After two earlier decisions denying disability benefits and on remand from federal district court, the Appeals Council assigned this case to a new ALJ for further consideration pursuant to the remand order. *See Anthony S. v. Berryhill,* 2018 WL 2021227 (N.D Ill. May 1, 2018) (Cox J.); (R.623). Claimant amended his alleged disability onset date to March 11, 2009, and the limited period of time at issue now is March 11, 2009, through March 31, 2011. (R.623). The ALJ held a telephonic hearing on March 22, 2020, and all parties participated by telephone. (R.623). Claimant was represented by counsel and testified during the hearing. (R.623). An impartial medical expert and an impartial vocational expert also testified. (R.623).

On March 24, 2020, the ALJ issued her decision, finding Claimant was not under a disability as defined by the Social Security Act from March 11, 2009, through March 31, 2011, his date last insured. (R.623-35). The Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the

---

[3] The Court assumes familiarity with the procedural history of this case in both the Social Security Administration and federal court and will not recount all of the administrative hearings and prior civil actions in this Opinion. *See Anthony S. v. Berryhill*, Case No. 17 C 2625 (N.D. Ill.).

Commissioner. Claimant then filed another lawsuit, again seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II.    The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity from March 11, 2009 (Claimant's amended alleged disability inset date) through March 31, 2011, his date last insured (R.625). At step two, the ALJ found Claimant had the following severe impairments: anxiety and depression. (R.626). At step three, the ALJ found that none of Claimant's impairments met or equaled any listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (R.628). With respect to Claimant's mental impairments, the ALJ evaluated the paragraph B criteria and determined that Claimant had mild limitations in two areas of functioning, including (1) understanding, remembering or applying information and (2) concentrating, persisting and maintaining pace, and moderate limitations the other two areas of functioning, including (3) interacting with others and (4) adapting and managing himself. (R.628-29). Before step four, the ALJ determined:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant could understand simple instructions, engage in routine tasks, and have occasional interactions with supervisors, coworkers, and the public.

(R.629). At step four, the ALJ found that Claimant did not have any past relevant work. (R.634). At step five, the ALJ found there were other jobs in the national economy that Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of kitchen helper, industrial cleaner, and hand packager. (R.634). Based on these findings, the ALJ concluded Claimant was not disabled from March 11, 2009, through March 31, 2011. (R.635).

4

## DISCUSSION

### I. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

5

> All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." … At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.") (internal quotations and citation omitted). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

## II. Analysis

Claimant argues that the ALJ's decision cannot stand in this case because: (1) the ALJ erred when she did not include any exertional limitations in the RFC assessment to accommodate Claimant's alleged physical impairments; (2) the ALJ erred in rejecting the opinion of Claimant's treating physician; and (3) the ALJ's mental RFC assessment failed to properly account for Claimant's functional deficits during the relevant time period. Claimant's Brief [ECF No. 13], at 7-15. The Court will address each argument below.

**A. The ALJ's Physical RFC Assessment Is Supported by Substantial Evidence**

Claimant argues that the ALJ erred when she did not include any exertional limitations in the RFC assessment to accommodate Claimant's alleged physical impairments, and that she did not sufficiently explain why she did not include any exertional limitations in the RFC. The Court is not persuaded by Claimant's argument.

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Mandrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). The RFC is a determination of the maximum work-related activities a claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-1001 (7th Cir. 2004). Social Security regulations require that the RFC assessment must incorporate all of a claimant's limitations that are supported by the medical record. *Id.* at 1001; *see also* 20 C.F.R § 404.1545(a)(1).

"A severe impairment is an impairment or combination of impairments that 'significantly limits [one's] physical or mental ability to do basic work activities.'" *Paul F. v. Saul*, 2020 WL 4934971, at *2 (N.D. Ill. Aug. 24, 2020) (citing *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). Here, the ALJ found that Claimant's anxiety and depression were severe impairments and that his physical impairments were not severe impairments. (R.626). Claimant, however, contends that his physical

7

impairments, including his osteoarthritis, back pain, and vascular disease which predated his date last insured, caused significant functional limitations and the ALJ failed to address those impairments or factor them into the RFC assessment.

Contrary to Claimant's argument, however, the ALJ specifically considered his physical impairments, including those Claimant points out in his brief, and concluded they were not severe and also found there was no evidence in the record that those impairments were work preclusive or more than minimally affected his ability to engage in work activities. (R.626-27). The ALJ closely reviewed the record evidence and stated:

> [T[he claimant has complained of numerous degenerative conditions including degenerative disc disease of the lumbar spine and degenerative joint disease of the hips, knees with bilateral knee patellofemoral chondromalacia, and bilateral posterior tibial tendinitis with complaints of pain in his back, hips, knees, and ankles for years. However, there is minimal treatment and documentation of physical abnormalities during the period at issue. The claimant underwent x-ray series of the knees, hips, and pelvis in December 2007, prior to the alleged onset date, and these documented only minimal degenerative changes in the right hip and medial joint compartments of both knees. (Ex. 7F/26). In a subsequent consult for hip and knee pain in February 2008, the physical exam demonstrated no hip tenderness and only mild tenderness over the patellar tendons of both knees. (Ex. 3F/22). The claimant did not have another consultation for this condition until after the date last insured, in August 2011; however, during this visit he complained primarily of knee pain and pain in the ankles and heels. (Ex. 10F/70). His knees had only mild swelling and tenderness medially with crepitus and a range of motion from 0-135 degrees. All other provocative tests of the knees as well as the ankle and heel tests were normal. A right knee MRI was reviewed that documented chondromalacia patella grade 3, but no evidence of meniscal tears. (See 4F/23 for MRI). The orthopedist recommended activity modification, avoiding knee bending, quad exercises, stopping smoking and weight loss, but did not recommend any surgical intervention. (Ex. 10F/70). An October 2011 left ankle MRI was negative and the right ankle MRI was generally negative. (Ex. 4F/21, 41). The claimant started injections in his knees in

> December 2011, also after the date last insured. (Ex. 4F/17). Nonetheless, as the findings on the radiological imaging and physical exams are minimal and the claimant had no treatment other than medications during this period at issue, I have found that these impairments were not severe prior to the date last insured.

(R.626).

With multiple citations to the record, the ALJ specifically discussed Claimant's physical impairments, including, among others, his osteoarthritis, vascular disease and back pain, and the ALJ also explained why she found that they were not severe impairments prior to his date last insured. (R.626). The ALJ further concluded that there was not any evidence in the record to suggest that these non-severe physical impairments impacted his ability to work. (R.626). The ALJ specifically noted that "there is minimal treatment and documentation of physical abnormalities during the period at issue" and concluded that the objective medical evidence in the record did not support a finding that Claimant's physical impairments *during the relevant time period* were severe or that additional limitations were required to accommodate his non-severe physical impairments. (R.626-27).

The Court notes that the relevant time period was a key element of the ALJ's assessment. (R.631). To the extent that Claimant's physical condition may have worsened after the relevant time period, that does not warrant remand or reversal on this record. "The Seventh Circuit has recognized that worsening of a claimant's condition after the date last insured does not provide a basis for granting benefits during the relevant time period." *Vincent A. v. Berryhill*, 2019 WL 2085104, at *8 (N.D. Ill. May 13, 2019); *Gwendolyn M. v. Berryhill*, 2019 WL 2208306, at *10 (N.D.

9

Ill. May 22, 2019).[4] The ALJ explained that the objective medical evidence and Claimant's admitted activities supported the RFC and that "the medical evidence, in its entirety[,] demonstrates that the claimant has no great limitation in his ability to perform work-related activated than those reflected in the residual functional capacity." (R.633).

In the Court's view, the ALJ more than adequately considered the evidence before, during, and after Claimant's date last insured and sufficiently explained her reasoning why she did not find any of Claimant's physical impairments to be severe prior to his date last insured. The Court also finds that the ALJ's decision not to include any exertional limitations in her RFC assessment was reasonable and supported by substantial evidence, and the ALJ provided the requisite logical bridge between the evidence and her conclusions. Accordingly, remand is not required on this issue.

### B. The ALJ Reasonably Considered the Medical Opinions

Claimant's second argument is that the ALJ failed to comply with the remand order and erred when she did not give controlling weight to the opinion of his treating psychiatrist, Dr. Rian Rowles, D.O. The Court is not persuaded by this argument.

---

[4] *See also Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011) (affirming ALJ's decision despite worsening symptoms after the claimant's date last insured when records prior to that date showed the claimant was asymptomatic); *Million v. Astrue*, 260 Fed. App'x 918, 921-22 (7th Cir. 2008) (explaining that post-date last insured medical records are "relevant only to the degree that they shed light on [the claimant's] impairments and disabilities from the relevant insured period"); *Nina Joyce H. v. Saul*, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020) (holding that the claimant must establish disability by her date last insured).

According to the applicable regulations in effect at the time Claimant filed his application for disability benefits, the opinion of a treating physician is entitled to controlling weight when it is well-supported and consistent with other evidence of record.[5] 20 C.F.R. § 404.1527. However, the law is clear that an ALJ reasonably may discount a treating physician's opinion when it is internally inconsistent with his own longitudinal treatment records and/or other evidence of record. 20 C.F.R. § 404.1527; *Gwendolyn M. v. Berryhill*, 2019 WL 2208306, at *10 (N.D. Ill. May 22, 2019) (citing *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012)) ("The ALJ did not err here in determining that [the treating physician's] opinion conflicted with other medical evidence, including his own treatment notes."); *Adrian Z. v. Berryhill*, 2019 WL 3555397, at *2 (N.D. Ill. Aug. 2, 2019) (finding that the claimant's treating physician "offered no medical evidence to support his speculative theory, and thus his opinion on this matter was not entitled to controlling weight").

Here, the ALJ stated that she gave "little weight" to Dr. Rowles' opinion and offered the following explanation:

> In reviewing the medical statements from Dr. Rowles in November 2014 and July 2019 (Exhibits 13F, 16F), I find little support, or consistency throughout the entire record that the claimant was in an incapacitating condition, which left him disabled with regard to work.

(R.632). More specifically, the ALJ acknowledged Claimant's long-term treating relationship with Dr. Rowles and noted that Claimant began to see Dr. Rowles for depression in approximately 2004. (R.630). The ALJ recognized that, in July 2008,

---

[5] The treating physician rule requires deference to the opinion of a treating physician and was in effect at the time Claimant filed his application and, therefore, applies in this case. 20 C.F.R. 404.1527(c)(2), (d)(2).

11

Dr. Rowles diagnosed Claimant with "generalized anxiety disorder and major depressive disorder, recurrent, in remission" and continued Claimant's medications—Celexa, Zanax, and Topamax. (R.630). The ALJ then noted that Claimant did not return to see Dr. Rowles for more than 10 months, and at that time, his "mental exam was within normal limits, with a normal attention span, generally appropriate behavior, and no signs of cognitive difficulty" and the "the only active diagnosis on file was generalized anxiety disorder." (R.631). The ALJ further noted that although Claimant was instructed to return within six months or earlier if needed, the record shows that Claimant's next visit to Dr. Rowles was not until October 2011, which was 22 months after his last visit and over six months after his date last insured.[6] (R.631).

When explaining the weight she gave to Dr. Rowles' opinion, the ALJ noted that most of Claimant's treatment occurred after the date last insured, and that Claimant had only two visits during the relevant period despite being instructed to return more frequently. (R.632). The ALJ also explained that both of Dr. Rowles' opinions were provided years after Claimant's date last insured and that Dr. Rowles acknowledged in his 2019 opinion he no longer had access to his medical records prior to 2014. (R.636). So, none of those records were in the record or available for review. In the Court's view, the ALJ more than adequately explained why she gave little

---

[6] The ALJ also noted: "Although the claimant testified that he had bouts of depression lasting eight to nine months during this period and tried about 30 different medications for his mental health concerns, Dr. Rowles notes only document the medications described above." (R.631). The ALJ was not persuaded by Claimant's testimony. That is a credibility finding within the province of the ALJ and the Court cannot say it is patently wrong or unsupported by substantial evidence. The ALJ also explained, "Although the claimant also testified that he missed appointments due to depression, the record does not document a history of canceled or missed medical appointments during this period." (R.631).

12

weight to Dr. Rowles' opinion and provided the requisite logical bridge between the evidence and her conclusion. Nothing more is required of the ALJ.

The ALJ further explained why she gave "great weight" to the two impartial medical experts who provided opinion testimony in this case — Billings Fuess, Ph.D., the clinical psychologist who testified at Claimant's hearing (R.767-75), and Ellen Rozenfeld, Psy.D. (R.601-07), who answered a medical interrogatory assessing Claimant's mental impairments. (R.632-33). Addressing the testimony of Dr. Fuess, the ALJ noted:

> Dr. Fuess stated that the claimant did not even have a diagnosis of depression in 2010, and although the claimant might have had severe bipolar disorder in 2019, that would not necessarily have been the case in 2010. Dr. Fuess acknowledged that electroconvulsive therapy was designed to treat severe depression, but he could not opine as to the severity of the depression at the time in question as the claimant did not have depression diagnosis.

(R.633). Addressing Dr. Rozenfeld's report, the ALJ stated:

> [Dr. Rozenfeld] indicated that the claimant was referred to electroconvulsive therapy in October 2011, but also instructed to return in 12 weeks. While Dr. Rozenfeld acknowledged that attempting ECT suggests that depression has not responded to medication, she also noted that this was 9 months after the date last insured. Dr. Rozenfeld commented that the claimant had no treatment for 14 months prior to the date last insured. She agreed with the state agency that there is not sufficient evidence to assess the severity of the claimant's conditions prior to the date last insured given the large gaps in treatment and a record supporting an attenuation of symptoms with regular treatment.

(R.633). In addition to the lack of record evidence before the date last insured, both medical experts pointed out inconsistencies in Dr. Rowles' opinion and the objective evidence in the record, and the ALJ was more persuaded by the opinions of the medical experts. (R.632-33). The ALJ specifically noted:

13

> Of note, the claimant was not diagnosed with bipolar disorder or depressive disorder at all after the March 11, 2009 appointment, and at that appointment, his depressive disorder was considered to be in remission. (Ex. 8F/20-21). This is entirely inconsistent with Dr. Rowles' statement that the claimant was suffering from severe bipolar disorder.

(R.632). The Court cannot say that this conclusion is not supported by substantial evidence.

Claimant essentially argues the ALJ should have weighed the evidence and medical opinions differently than she did, but this Court cannot reweigh the evidence or substitute its judgment for the ALJ's with respect to how the conflicting medical opinions should be weighed. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013); *see also Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (upholding ALJ's decision to discount treating physician's opinion where contradicted by objective medical evidence and subjective complaints). The law is clear that an ALJ "may discount a treating physician's medical opinion if it is inconsistent" with the opinion of a consulting physician and/or not supported by the record evidence so long as the ALJ articulates her reasons. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

In the Court's view, the ALJ more than sufficiently articulated her reasons for discounting Dr. Rowles' opinion. She explained that Dr. Rowles' opinion was not consistent with or supported by his treatment records and that, based on the objective medical evidence, the ALJ was reasonably more persuaded by the opinions of the impartial medical experts in this case. (R.632-33). Consistent with the applicable regulations, the ALJ explained what weight she gave to the medical opinions in this case and the basis for her conclusions. The law does not require the ALJ to do anything more. Accordingly, remand is not required on this issue.

14

**C. The ALJ's Mental RFC Findings Are Supported by Substantial Evidence**

Claimant's last argument is that the ALJ's mental RFC assessment failed to properly account for his functional deficits during the relevant time period. Claimant contends that his mental impairments had worsened significantly prior to his date last insured and the ALJ failed to accommodate those limitations in the mental RFC assessment. Claimant supports his argument largely with reference to his symptoms and condition after his date last insured. The Court again is not persuaded by Claimant's argument.

To succeed in showing an ALJ's evaluation of mental impairments is not supported by substantial evidence, a claimant must demonstrate that the ALJ ignored or misconstrued evidence that compelled a finding that there were mental impairments that should have been accommodated and included in the RFC (*i.e.*, work-related functional restrictions that persisted for a continuous period of not less than twelve months). 42 U.S.C. § 423(d)(1)(A); *see Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021); *Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir. 2021); *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. July 26, 2010). Here, the ALJ acknowledged that Claimant reported a worsening of his depression on the alleged onset date of March 11. 2009, but the ALJ found that "the record does not document significant mental status deficits."(R.630). The ALJ specifically noted:

> In April 2010, the claimant's primary care doctor noted complaints about depression and anxiety, but the mental status exam was normal. (Ex. 10F/38-40). There were no specific complaints about depression. In a second April 2010 visit for bloodwork follow up, the claimant's depression was listed as stable and he was not suicidal. (Ex. 10F/35). He had no specific depression symptoms to report in September or

15

> December 2010. (Ex. 10F/28, 30). The claimant's primary care physician did not even note a diagnosis of depression in March 2011. (Ex. 10F/26). Although the claimant also testified that he missed appointments due to depression, the record does not document a history of canceled or missed medical appointments during this period. … The records during the relevant period do not support that the claimant's medications were failing, as they remained essentially unchanged and the mental status exams were within normal limits

(R.631). In the Court's view, the ALJ performed a thorough and careful review of the record and found that the objective medical evidence did not support Claimant's allegations of significant mental deficits prior to his date last insured, and Claimant does not point to any evidence that the ALJ did not consider. When explaining her RFC assessment, the ALJ specifically stated:

> [T]he above residual functional capacity assessment is supported by the objective medical findings, the claimant's inconsistent and minimal history of treatment, and the claimant's admitted activities. Similarly, the state agency consultants and two medical experts opined that there is insufficient evidence of any work-related limitations during the period at issue. However, I have given the claimant the benefit of the doubt in limiting him as noted above based on clinical observations and subjective symptom complaints. I find that while the claimant has experienced some restrictions from his impairments, the medical evidence, in its entirety demonstrates that the claimant has no greater limitations in his ability to perform work related activities than those reflected in the residual functional capacity reached in this decision. Given the observations that the claimant was glum and unhappy, I have limited him to only occasional interaction with others. Given the moderate limitation in adaptation or managing oneself (which Dr. Fuess testified was because the claimant was noted to be glum and testified to having poor hygiene, which is not reflected in the actual medical records from the critical period at issue), I have further limited him to work involving simple instructions and routine tasks. During the relevant period, the record documents that the claimant was compliant with treatment and had no complaints of medication side effects. His medications remained relatively stable. He was not referred for psychiatric hospitalization or to counseling and he had few psychiatry visits. The record supports a finding that the claimant can engage in activities with the mental residual functional capacity limitations noted above.

16

(R.633-34). The law requires that an ALJ must point to evidence in the record that supports the limitations she included in the RFC assessment. *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011). In the Court's view, the ALJ did exactly that as quoted above.

Claimant argues there is evidence in the record that shows he had functional deficits prior to his date last insured and that those deficits are cooroborated by later records, and therefore, the ALJ should have inferred from those later records that he was not able to work during the relevant time period. Claimant, however, does not point to any objective evidence *during the relevant time period* that supports an inference or conclusion that Claimant was disabled prior to his date last insured. The evidence that Claimant does rely upon comes after his date last insured, and that evidence does not support the inference Claimant wants the Court to make which is that there is sufficient evidence in the record to support a finding of disability during the relevant time period.

For example, Claimant argues that his history of sparse treatment at times was due to him being so depressed that he could not leave the house. The ALJ considered that argument and concluded it was not credible. (R.631). She explained that his medical records list Claimant's depression as stable, medical providers during the relevant time period note few mental concerns, and his primary care physician did not note a diagnosis of depression until March 2011. (R.631). As noted above, the ALJ also explained, "Although the claimant also testified that he missed appointments due to depression, the record does not document a history of canceled

17

or missed medical appointments during this period." (R.631). *See also* footnote 6, *supra*.

Claimant essentially is arguing that the ALJ should have weighed the evidence differently and inferred that Claimant must have had symptoms prior to his date last insured that were as severe as his symptoms after the date last insured even though the evidence in the record to support such an inference or conclusion was sparse or non-existent. The ALJ was not persuaded by this argument, and neither is the Court. The ALJ explained that there is inconsistent and minimal history of treatment during the relevant time period and the records submitted after Claimant's last insured date do not specifically address the extent of Claimant's limitations prior to the date last insured. (R.633). In other words, the ALJ concluded there was not enough evidence in the record that cooroborated Claimant's allegations that he had severe mental limitations during the relevant time period and could not work prior to his date last insured. The ALJ was not willing to infer otherwise based on Claimant's medical records after the date last insured, and the Court cannot say that decision was unsound on the record before the ALJ.

The fact that there may be more than one way to look at a record like this and that reasonable minds might differ over the results is exactly why the court is not permitted to reweigh evidence on substantial evidence review. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted). It is the ALJ's job to weigh the evidence in the record.

18

The ALJ did that here. She did not ignore evidence Claimant argues is relevant and should have been weighed differently. Claimant asks the Court to consider the same evidence the ALJ considered and come out differently than did the ALJ. This Court cannot, and will not, second guess the ALJ's analysis under these circumstances.

In the Court's view, the ALJ reasonably considered Claimant's mental limitations during the relevant time period, included some functional limitations in the RFC that addressed them, and more than adequately built a logical bridge from the evidence to her conclusion about Claimant's mental RFC. The Court's job in this appeal is to review the ALJ's decision against the legal standards articulated at the beginning of this Memorandum Opinion and Order, not to review the evidence *de novo*, *i.e.*, in the first instance. Within this context, remand is not required on this issue.

## CONCLUSION

Accordingly, for all the reasons set forth above, Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 13] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 16] is granted. Therefore, the decision of the Commissioner is affirmed, and this case is closed.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 19, 2025